No. 25-8156

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

*v.*

CARLITOS RICARDO PARIAS,
*Defendant-Appellee.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE CENTRAL DISTRICT OF CALIFORNIA*
*DISTRICT COURT NO. CR 25-904-FMO*

**GOVERNMENT'S REPLY BRIEF**

TODD D. BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

SURIA M. BAHADUE
Assistant United States Attorney
Chief, Criminal Appeals Section

ALEXANDER P. ROBBINS
Assistant United States Attorney
Deputy Chief, Criminal Appeals Section

AMY E. POMERANTZ
Assistant United States Attorney
Criminal Appeals Section

1200 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
Email: amy.pomerantz@usdoj.gov

Attorneys for Plaintiff-Appellant
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

**DESCRIPTION** **PAGE(S)**


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 5

A. The District Court's BRA/INA Analysis Is Properly Before this Court .......... 5

1. The Statutory-Detention Question Was Presented and Litigated Below .......... 6

a. The district court repeatedly raised the BRA/INA issue on its own initiative .......... 7

b. Defendant's dismissal motion led on statutory grounds .......... 9

2. The District Court's Ten-Page Statutory Analysis Was Foundational to its Judgment .......... 11

a. The district court collapsed the statutory and constitutional issues .......... 11

b. The district court's "impermissible" government purpose finding was either clear factual error or an implicit, erroneous statutory holding .......... 13

3. Review of the District Court's Statutory Analysis Is Necessary .......... 16

4. Defendant Does Not Defend the District Court's Misreading of the BRA .......... 20

B. Dismissal With Prejudice Was an Abuse of Discretion .......... 21

1. Tailored, Lesser Remedies Were Available .......... 23

## TABLE OF CONTENTS

**DESCRIPTION** **PAGE(S)**


2. The Order Contains No Findings of Flagrant Prosecutorial Misconduct—and Defendant Cannot Supply Them on Appeal ..... 28

a. *Chapman* and *Bundy* underscore why dismissal was inappropriate ..... 32

C. The District Court Exceeded the Bounds of its Supervisory Powers ..... 34

III. CONCLUSION ..... 38

## TABLE OF AUTHORITIES

**DESCRIPTION** **PAGE(S)**

### Cases

*Blue Cross and Blue Shield of Alabama v. Unity Outpatient Surgery Center*,
490 F.3d 718 (9th Cir. 2007) .......... 16, 19

*Koon v. United States*,
518 U.S. 81 (1996) .......... 17, 19

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) .......... 26

*Marbury v. Madison*,
5 U.S. 137 (1803) .......... 37

*United States v. Barrera-Moreno*,
951 F.2d 1089 (9th Cir. 1991) .......... 33

*United States v. Bendann*,
180 F.4th 147 (4th Cir. 2026) .......... 16

*United States v. Bundy*,
968 F.3d 1019 (9th Cir. 2020) .......... 17, 22, 32, 33

*United States v. Chapman*,
524 F.3d 1073 (9th Cir. 2008) .......... passim

*United States v. Diaz-Hernandez*,
943 F.3d 1196 (9th Cir. 2019) .......... 20

*United States v. Edmonds*,
103 F.3d 822 (9th Cir. 1996) .......... 28

*United States v. Gonzalez*,
2026 WL 2169740 (C.D. Cal. 2026) .......... 21

## TABLE OF AUTHORITIES (continued)

**DESCRIPTION** **PAGE(S)**

*United States v. Isgro*,
974 F.2d 1091 (9th Cir. 1992) .................................................. 3

*United States v. Jennings*,
960 F.2d 1488 (9th Cir. 1992) .................................................. 35

*United States v. Lett*,
944 F.3d 467 (2d Cir. 2019) .................................................. 12

*United States v. Morrison*,
449 U.S. 361 (1981) .................................................. 23, 25, 32

*United States v. Myvette*,
2026 WL 485755 (C.D. Cal. 2026) .................................................. 28

*United States v. Olano*,
507 U.S. 725 (1993) .................................................. 27

*United States v. Ramos*,
2026 WL 1298172 (D. Haw. 2026) .................................................. 18

*United States v. Rangel*,
318 F. Supp. 3d 1212 (E.D. Wash. 2018) .................................................. 21

*United States v. Rogers*,
751 F.2d 1074 (9th Cir. 1985) .................................................. 25

*United States v. Santos-Flores,*
794 F.3d 1088 (9th Cir. 2015) .................................................. 20, 26

*United States v. Sedeno-Badia*,
2022 WL 837499 (D. Ariz. 2022) .................................................. 21

*United States v. Simpson*,
927 F.2d 1088 (9th Cir. 1991) .................................................. passim

*United States v. Trujillo-Alvarez*,
900 F. Supp. 2d 1167 (D. Or. 2012) .................................................. passim

## TABLE OF AUTHORITIES (continued)

**DESCRIPTION** **PAGE(S)**

*United States v. Urbina-Escoto*,
2020 WL 614702 (W.D. Wash. 2020) .................... 21

**Statutes**

8 U.S.C. § 1226(c)(1)(E)(ii) .................... 15

18 U.S.C. § 3142(d) .................... 2, 11, 20

18 U.S.C. § 3161(h)(1)(D) .................... 25

**Rules**

Fed. R. Crim. P. 51(b) .................... 27

Fed. R. Crim. P. 52(b) .................... 27

Fed. R. Evid. 201(b) .................... 26

No. 25-8156

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

*v.*

CARLITOS RICARDO PARIAS,
*Defendant-Appellee.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE CENTRAL DISTRICT OF CALIFORNIA*
*DISTRICT COURT NO. CR 25-904-FMO*

**GOVERNMENT'S REPLY BRIEF**

# I

# INTRODUCTION

Defendant's answering brief defends an order the district court did not write. This was not a narrow Sixth Amendment decision. From the outset of the case—and before any access-to-counsel issue arose—the district court pursued what it thought was a statutory violation: it concluded that defendant, having been released on bond under the Bail Reform Act, could not thereafter be civilly detained under the

Immigration and Nationality Act for purposes of removal. Because the district court fundamentally misunderstood the relationship between these two statutes—following *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167 (D. Or. 2012)—it incorrectly concluded that the two detention schemes were in "unavoidable" conflict (ER-28) and that the government's civil detention of defendant ran afoul of the court's bail-release decision in the criminal case.

Defendant does not defend the district court's statutory analysis on the merits. He does not defend the district court's reading of 18 U.S.C. § 3142(d) or its application of *Trujillo-Alvarez*. He does not explain why the seven courts of appeals to have rejected the district court's reading were wrong. Instead, he asks this Court to look past the issue entirely and disregard over half of the court's written legal analysis—ten out of eighteen pages—as dicta or surplusage.

Defendant's re-interpretation, however, cannot be squared with the record. The court's mistaken legal premise about the "interplay" between the BRA and INA was the foundation of its decision in this case. (ER-19.) It was why the court preemptively threatened to dismiss the indictment if defendant were to be detained by ICE following his

release under the BRA. (ER-207–08.) It was why the court asked the parties, sua sponte, whether it should "dismiss the charging document" because the government was "keeping [defendant] in ICE custody." (ER-38.) It was the leading argument in defendant's dismissal motion (ER-115) and the central subject of the government's opposition. (ER-135, 140–42.) It was the basis of the district court's "impermissible purpose" determination. (ER-28.) And it was the linchpin of the court's dismissal order, necessary to both its constitutional finding and its choice of remedy. (ER-19–29.)

An appellee can defend a district court's ruling on alternate legal grounds, but it cannot go back in time and change the decision the court actually made. The district court's actual decision was an abuse of discretion, even—and *especially*—if it had been based solely on a Sixth Amendment violation, as defendant now contends. Dismissal with prejudice—the "most severe sanction" possible, *United States v. Isgro*, 974 F.2d 1091, 1097 (9th Cir. 1992)—is available only where the government has engaged in "flagrant prosecutorial misconduct" and where "no lesser remedial action is available." *United States v. Chapman*, 524 F.3d 1073, 1085, 1087 (9th Cir. 2008). This standard

was not met under any reading of the court's opinion. The court made no finding of prosecutorial misconduct—flagrant or otherwise—and it rejected several lesser remedies that were available. It did not continue the trial date, even though a month remained on the speedy-trial clock. It did not order immigration authorities to make defendant available or direct the government to arrange access. It did not dismiss the indictment without prejudice. It did not even hold a hearing on the dismissal motion that the court itself had proposed. (*See* ER-64.) Defendant disputes none of this. Instead, he devotes much of his brief to filling gaps in the court's order and supplying missing findings of flagrancy. But this Court reviews the order, not the answering brief—and the order contains no such findings.

The district court permanently barred prosecution of this defendant for this crime approximately two months into the case, without the findings that sanction requires. And it did so based on the court's disapproval of a separate civil agency's exercise of its detention authority under the INA. That was an impermissible exercise of the court's supervisory powers and an abuse of its discretion. This Court should reverse.

## II

## ARGUMENT

The district court's extensive analysis of the Bail Reform Act and Immigration and Nationality Act is properly before this Court because that was the basis of its decision. But even if this Court were to overlook the district court's actual reasoning—as defendant urges—the district court's with-prejudice dismissal would still be an abuse of discretion, since nothing in the relevant precedents comes close to justifying such a remedy on the facts presented here. Either way, reversal is necessary.

### A. The District Court's BRA/INA Analysis Is Properly Before this Court

Defendant's plea to ignore the district court's BRA-based reasoning rests largely on the court's statement that its Sixth Amendment finding would have been "sufficient to independently resolve defendant's Application." (ER-19; DAB 28.) But the district court did not stop at the Sixth Amendment—and neither should this Court. Its ten-page analysis of the "interplay" between the BRA and INA was not beside the point. It was foundational to both the court's

understanding of the legal wrong and to its exercise of its remedial discretion.

#### *1. The Statutory-Detention Question Was Presented and Litigated Below*

Defendant stresses that the district court declined to find an express BRA violation here (as it previously had in *United States v. Arreola-Arreola,* C.A. 25-5471 (C.D. Cal.)).[1] But that does not automatically insulate its statutory premise from appellate review.[2] As the record shows, the detention question was what drove the court's judgment in this case.

---

[1] In *Arreola-Arreola,* the same district judge retroactively converted his with-prejudice dismissal order into a without-prejudice dismissal almost four months after the government appealed. *Compare* Dkt. 39 *with* Dkt. 43, No. 25-MJ-4608 (C.D. Cal.); *see also* C.A. 25-5471, Dkt. 15 (so noting). After the defendant was removed and refused to file an answering brief (GOB 31 n.12), this Court remanded to allow the district court to dismiss the case without prejudice. (*Cf.* DAB 68 n.25 (chiding the government for not "seeing th[at] case through to decision").)

[2] The government previously acknowledged that the court's order stopped short of expressly finding a BRA violation. (GOB 30 n.11.) Defendant's brief repeatedly characterizes this as a concession. (DAB 29, 31, 34, 63.) It is not.

#### *a. The district court repeatedly raised the BRA/INA issue on its own initiative*

As the government previously detailed (GOB 8–24), the district court raised the BRA/INA issue, sua sponte, three separate times in the weeks following case assignment, freely expressing its "view" (ER-61) about the legality of defendant's immigration detention on the record. Each time it did so, the court threatened to dismiss the indictment based on a perceived conflict between the BRA and INA:

*First time*: On November 21, 2025—four days after assignment—the district court released defendant from federal criminal custody and issued a written order inviting a motion to dismiss the indictment if defendant were to be civilly detained thereafter:

> In the event defendant is not released forthwith, *or if he is taken into custody by ICE* or any other federal law enforcement agency following his release, defense counsel may file an ex parte application *to dismiss the operative charging document.*

(ER-207–08 (emphasis added).)

*Second time*: On December 4, 2025, the district court raised the BRA/INA issue again at the outset of the first hearing, a status conference regarding a cash-deposit bond requirement. Even though the statutory detention question had nothing to do with that

requirement, the court began by announcing, unprompted, that "the defendant *should not be in custody* since he was given bond. . . ." (ER-36–37 (emphasis added).) The court then repeated its prior threat to dismiss the indictment because the government was "keeping [defendant] in ICE custody":

> I think it's a threshold issue before we get to *the issue of whether or not he should even be in ICE custody* or *whether or not I should dismiss the—the charging document* because—because it's—you know, *keeping him in ICE custody*.

(ER-38 (emphasis added).) No cognizable Sixth Amendment claim existed at the time; only two days had passed since defense counsel first contacted Adelanto. (ER-120, 125.)

*Third time*: The court returned to the BRA/INA issue at the bail-review hearing on December 9, 2025. It asked the prosecutor why the government had not previously sought findings under § 3142(d) to trigger that provision's ten-day detention period (the precise statutory theory that would anchor its dismissal order weeks later). (ER-60.) The court then restated its "view" that defendant "should now be released" from immigration custody. (ER-61; *see also* ER-65 (asking "what is the purpose of the Bail Reform Act if he's still in custody?").)

At the end of the hearing, defense counsel mentioned difficulty scheduling a videoconference. In response, the court proposed that defense counsel use that to ask for dismissal:

> [W]hy not just file—and I would do it via ex parte, because the trial is coming up—file an ex parte to dismiss the Indictment, because, you know, *defendant's continued immigration detention* has jeopardized his constitutional *and statutory rights* to counsel because he's suffered undue hardship and inconvenience and that he has been denied the ability to meet with his attorney, [and] prepare for trial. . . .
>
> Why not just file that then?

(ER-64–65 (emphasis added).)

At that point, defendant had been detained in immigration custody for a total of fifteen days. (ER-48–50.) Defense counsel had been unable to schedule a virtual meeting for a total of seven days. He had not yet (and, in fact, never) attempted to meet with defendant in person.

#### *b. Defendant's dismissal motion led on statutory grounds*

Defense counsel appeared less confident than the district court that a cognizable access-to-counsel claim had ripened in the past seven days. (*See* ER-65.) And so, given the court's repeated invocation of a perceived conflict between the BRA and INA, counsel reasonably

interpreted the court's directives as an instruction to seek dismissal primarily on statutory grounds. (*See* ER-114 (Decl. of Gabriela Rivera ¶ 15 ("I understand that the Court will consider an *ex parte* application to dismiss the Indictment should Mr. Parias be held in immigration detention rather than released during the pendency of the criminal case."")).) Defendant's dismissal motion thus led with the detention issue, seeking "an order dismissing his case with prejudice, *due to the government's decision to detain him in immigration custody notwithstanding the Court's order releasing him on bond pending his criminal trial*." (ER-115 (emphasis added).)

Defendant presented dismissal with prejudice as an alternative to ordering release from immigration custody (a remedy he acknowledged the district court "may lack authority" to impose). (ER-116.) He invoked *Trujillo-Alvarez*—a district court decision addressing the BRA/INA issue—as "instructive and directly on point," concluding that defendant's civil detention was "in violation of the BRA" and the Constitution. (ER-117, 122–23.) The government responded on the same terms, framing the issue as defendant "ask[ing] the Court to ignore the INA." (ER-135.) The government explained that seven

courts of appeals had rejected *Trujillo-Alvarez*'s statutory interpretation. (ER-140–42.)

#### 2. *The District Court's Ten-Page Statutory Analysis Was Foundational to its Judgment*

##### a. *The district court collapsed the statutory and constitutional issues*

The district court's opinion belies defendant's characterization of it as a limited access-to-counsel decision. Throughout, the court repeatedly fused the statutory and constitutional issues. In the court's view, the reason the access-to-counsel problems were so significant is that defendant *should not have been detained in the first place*: "The government's decision to administratively detain Mr. Parias in Adelanto," it wrote, "is when and where the constitutional violations began."[3] (ER-25.)

Similarly, the court hitched its constitutional conclusion to its erroneous foundational premise that 18 U.S.C. § 3142(d) required the government to choose *ex ante* between prosecution and removal:

> The government's failure to coordinate the overlapping actions of its separate agencies while relentlessly pursuing

[3] As noted in the opening brief (GOB 10, 43–44, 52, 67) and below (ER-138), "decision" is a misnomer. Defendant's immigration detention was mandated by statute.

> Mr. Parias's criminal proceedings created a situation from which constitutional violations could—and did—occur.

(ER-25.) It opined that preventing the government from "wield[ing] its discretion . . . unfairly" with respect to "prioritiz[ing] criminal prosecution over removing a criminal defendant" was a "principle" it found "no less important here." (ER-24; *contra* DAB 57–63 (arguing that this same "principle" was, in fact, not important here).)

Elsewhere in its opinion, the district court went further still, identifying defendant's immigration detention as the "cause" of the constitutional injury:

- "[T]his case is about the violation of Mr. Parias's Sixth Amendment right to counsel *caused by his detention in ICE custody*." (ER-27 n.15.)

- "[T]he government has jeopardized this court's ability to try Mr. Parias in compliance with the demands of the Sixth Amendment *by placing him in immigration detention*." (ER-26.)

- "Failure to Adhere to the Process Crafted by § 3142(d) Can Jeopardize a Defendant's Constitutional Rights" (ER-22 (capitalization in original)).[4]

---

[4] As the government has explained (GOB 39–43), the court fundamentally misread § 3142(d). *See United States v. Lett*, 944 F.3d 467, 472 (2d Cir. 2019).

The district court then expressly linked defendant's INA detention to its own supervisory authority:

> The government's decision to detain Mr. Parias in Adelanto "does not mean, however, that this Court is powerless to prevent the Executive Branch from ignoring its obligations" under the Constitution.

(ER-25 (quoting *Trujillo-Alvarez*, 900 F. Supp. 2d at 1180).)

None of this identifies Adelanto's scheduling system as the source of constitutional injury. Instead, the opinion makes clear that the court's decision stemmed from what it viewed as the core legal wrong: the government's (statutorily mandated) "decision to detain Mr. Parias in Adelanto." (ER-25.)

***b. The district court's "impermissible" government purpose finding was either clear factual error or an implicit, erroneous statutory holding***

The district court did not merely discuss the "interplay between the BRA and INA." (ER-19.) It made an express finding: the government had held defendant in immigration custody for the "plainly impermissible purpose of securing his appearance at a criminal trial without satisfying the requirements of the BRA." (ER-28–29 (quoting *Trujillo-Alvarez*, 900 F. Supp. 2d at 1179); *see also* ER-27–28 ("Here, it

is clear that Mr. Parias is being detained by ICE for the purpose of securing his presence at his ongoing criminal prosecution.").)

To the extent this was a factual finding, it was clear error. (*See* GOB 52–56.) Defendant had the burden to show that ICE detained him pretextually, *i.e.*, to advance the prosecution rather than for immigration purposes. (GOB 53; *accord* DAB 62.) He did not do so. Nor did the court's order fill the gap. The only fact cited in support of its "impermissible purpose" finding was prosecutors' efforts to *help coordinate defendant's transportation* to federal court for two hearings. (*See* ER-25, 28; *but see* ER-19, 25, 31 (also criticizing prosecutors for *failing* to coordinate with immigration authorities).) As the government pointed out (GOB 53–54), coordinating with another agency to get a defendant to court is a far cry from a bad-faith effort to subvert a defendant's BRA release—such a far cry, in fact, that the court's "impermissible purpose" can only reasonably be understood not as a factual finding at all, but rather as an implicit legal holding that defendant's detention was improper to begin with. Civil detention of a BRA-released defendant was "impermissible," in the court's view, *because it violated his right to release under the BRA.*

And in fact, that's what the district court wrote in its decision, characterizing the issue as an "unavoidable" legal conflict between the two statutory schemes:

> Mr. Parias's case highlights the *unavoidable problem* that emerges when ICE detains a criminal defendant granted bail under the BRA for the *plainly impermissible* purpose of securing his appearance at a criminal trial without satisfying the requirements of the BRA.

(ER-28–29 (cleaned up, emphasis added).) If immigration detention of a bail-released criminal defendant presents an "unavoidable problem," then, *by definition*, it is not a case-specific factual finding. It is an implicit legal holding on the very issue defendant now tries to disclaim.

Regardless, the court's "impermissible purpose" determination was both legally and factually untenable. Legally, because Congress *required* immigration authorities to detain defendant, as an alien charged with "assault of a law enforcement officer," under 8 U.S.C. § 1226(c)(1)(E)(ii)—no matter what the district court thought about the statute. (*See* ER-28 n.16.) Factually, because the immigration process *preceded* criminal process in this case; defendant was subject to an immigration detainer before any BRA decision had been made. (ER-136–37.) That alone should have defeated the court's finding of pretext.

But whether this Court views the impermissible-purpose finding as a clearly erroneous factual finding or a legally erroneous statutory holding, one thing is clear: a finding of improper governmental purpose is not "at most, dicta," as defendant contends. (DAB 63.) That is especially true here, because the remedy imposed by the court required a finding of flagrant prosecutorial misconduct, *Chapman*, 524 F.3d at 1085—and the impermissible-purpose finding was the closest the court came to providing that.

### *3. Review of the District Court's Statutory Analysis Is Necessary*

On abuse-of-discretion review, an appellate court must look to the district court's actual reasoning to determine if the court abused its discretion. *See Blue Cross and Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007) (abuse-of-discretion review "mean[s] that we must examine the adequacy of the rationale behind the district court's decision rather than simply reach the conclusion that seems best to us"); *United States v. Bendann*, 180 F.4th 147, 154 (4th Cir. 2026) (appellate court "may not substitute [its] judgment for that of the district court" but must "determine whether the court's exercise of discretion . . . was arbitrary or capricious"). That

entails evaluating the legal premises underlying a court's discretionary decision. *Koon v. United States*, 518 U.S. 81, 100 (1996) ("The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions."); *cf. United States v. Bundy*, 968 F.3d 1019, 1030 (9th Cir. 2020) (de novo review applies to "[a]ny legal issues predicating the district court's dismissal").

These principles require reviewing the district court's statutory analysis here. Contrary to defendant's claim, nothing about this inquiry is "advisory." (DAB 34, 57.) The government appeals from a judgment dismissing a felony indictment with prejudice based on an error of law. *Cf. Koon,* 518 U.S. at 100 ("A district court by definition abuses its discretion when it makes an error of law."). Defendant's cited authorities do not suggest otherwise: *Chafin* is a mootness case; *Platt* concerns the line between facial and as-applied challenges; and the concurrence in *PDK Laboratories* merely expresses a prudential preference for narrow decision-making, not a limit on an appellate court's power to review the reasoning that led to the judgment being appealed. (DAB 66–68 (citing cases).)

Defendant points to one sentence in the district court's opinion attempting to downplay any statutory holding by quoting the "whether legally justified or not" belt-and-suspenders language from defendant's brief. (DAB 29 (citing ER-26).) But that is a thin reed to support a wholesale re-write of the district court's decision. And, in any event, defendant identifies no authority holding that a reviewing court must accept a lower court's narrow self-characterization of its decision—particularly not where the record, and the court's own reasoning, belie that view. Other judges have correctly understood the court's dismissal order as a BRA/INA decision, and in some cases erroneously followed it. *See United States v. Zambrano*, 2:23-cr-00524-DMG-5 (C.D. Cal. 2026) (Dkt. 633 at 3) (relying on *Parias* to dismiss an indictment with prejudice based on the BRA/INA issue); *United States v. Ramos*, 2026 WL 1298172, *5 (D. Haw. 2026) (characterizing *Parias*'s holding as its § 3142(d) analysis).

Defendant's other fallback positions fare no better. The court's legal errors are not harmless, because when a discretionary ruling rests on both valid and invalid considerations, remand is required unless the record shows that the district court would have made the same choice

without the invalid ones. *Cf. Koon*, 518 U.S. at 113–14. The record here shows a decision—and remedy—that reflected the court's fundamental misinterpretation of the Bail Reform Act. The court's statement that its Sixth Amendment finding *could* resolve defendant's motion does not mean that it *would* have imposed the same with-prejudice sanction had it understood that civil detention was lawful. Certainly not on this record. And while an appellate court may affirm a legal holding on an alternative legal ground, it may not supply missing findings or apply its own remedial discretion in the first instance. *See Blue Cross*, 490 F.3d at 724.

Finally, defendant's suggestion that remand would be futile (DAB 70) because the district court would rule the same way improperly presupposes that the Sixth Amendment violation justified the court's remedy. To the contrary, as explained below, the court's Sixth Amendment findings alone were totally inadequate to justify dismissal with prejudice. This Court should review the decision the district court actually made—and correct it.

### 4. *Defendant Does Not Defend the District Court's Misreading of the BRA*

In its opening brief, the government explained how the district court committed numerous legal errors in its BRA/INA analysis: it misread 18 U.S.C. § 3142(d), a notice-and-coordination provision, as constraining immigration authorities' independent detention authority under the INA; it treated the government's decision not to invoke § 3142(d) as forfeiting that authority; it misapplied this Court's decision in *Santos-Flores*; and it imported wholesale a district court decision that has been rejected by every court of appeals to consider it. (GOB 39–58.)

Defendant offers no substantive response to any of this. Instead, he argues that this Court should ignore the statutory question entirely. (DAB 58–68.) But the district court made the statutory premise part of its dismissal order. And that premise was legally wrong. Nothing in the text of either statutory scheme, including in § 3142(d), compels the Executive Branch to choose between removal and prosecution. As the government explained in its opening brief—and as this Court previously has held—the BRA and INA run on separate tracks. (GOB 31–37 (citing *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019); *United States v. Santos-Flores,* 794 F.3d 1088, 1090–91 (9th Cir.

2015)).) Every court of appeals to address the issue has held that release under the BRA does not bar civil detention under the INA for removal purposes. (GOB 36 (listing cases).) Defendant identifies no appellate authority to the contrary.

The district court began its statutory analysis with a claim that the "interplay between the BRA and INA has caused both confusion and tension." (ER-19.) This Court can, and should, put an end to any such confusion here.[5]

## B. Dismissal With Prejudice Was an Abuse of Discretion

Even if this Court were to look past the district court's actual decision, and avoid appellate review of the court's statutory detention holding, reversal would still be required. Defendant appears to believe that, if this Court could just excise the district court's faulty BRA/INA analysis from the decision below, then it must "simply affirm based on

---

[5] District courts in this Circuit have indeed split on the issue. *Compare United States v. Gonzalez*, 2026 WL 2169740, *1 (C.D. Cal. 2026); *United States v. Sedeno-Badia*, 2022 WL 837499, *4 (D. Ariz. 2022); *United States v. Urbina-Escoto*, 2020 WL 614702 (W.D. Wash. 2020), *with United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167 (D. Or. 2012); *United States v. Zambrano*, No. 23-cr-524-DMG-5 (C.D. Cal. Feb. 5, 2026); *United States v. Rangel*, 318 F. Supp. 3d 1212 (E.D. Wash. 2018).

the now-undisputed Sixth Amendment violations." (DAB 32.) Not so fast.

Neither the district court's access-to-counsel finding, nor any prejudice resulting from such, justifies the with-prejudice dismissal here. (*Contra* DAB 35–57, 70.) A court may dismiss an indictment under its supervisory powers only where a defendant suffered "substantial prejudice" *and* where "no lesser remedial action is available." *Chapman*, 524 F.3d at 1087; *see also Bundy*, 968 F.3d at 1042–43 (dismissal is an "appropriate sanction for a constitutional violation only where *less drastic alternatives are not available*") (cleaned up, emphasis added). Because dismissal with prejudice encroaches on the prosecution's charging authority, "this sanction may be permitted only in cases of flagrant prosecutorial misconduct." *Chapman*, 524 F.3d at 1085.

That standard was not close to satisfied here. (*See* GOB 59–66.) Defendant's misplaced efforts to collapse *Chapman*'s independent requirements into the prejudice inquiry (DAB 35–36, 41, 51–52) are of no avail, because even substantial prejudice cannot justify the remedy here. The court was still required to tailor relief to the Sixth

Amendment injury, determine that no lesser remedy would work, and identify flagrant prosecutorial misconduct before it permanently extinguished the prosecution. *United States v. Morrison*, 449 U.S. 361, 364 (1981); *Chapman*, 524 F.3d at 1085. It did none of these things.

### *1. Tailored, Lesser Remedies Were Available*

In "[c]ases involving Sixth Amendment deprivations," the remedy "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *Morrison*, 449 U.S. at 364. The remedy here failed on both counts.

In *Morrison,* the Supreme Court held that even though federal agents committed a deliberate, "egregious" Sixth Amendment violation by knowingly meeting with a represented defendant outside of her counsel's presence, 449 U.S. at 362–63, dismissal of the indictment was nevertheless "plainly inappropriate" because the remedy was not "tailored to the injury suffered" and the proceeding could go forward "with full recognition of the defendant's right to counsel and to a fair trial." *Id*. at 364–66. If dismissal was disproportionate in *Morrison*, it was even more disproportionate here, where the record reflected at most administrative dysfunction and delay. (ER-8–9; ER-9 n.5.)

Defendant reduces *Morrison* to a case involving a "one-off constitutional violation" that involved no prejudice (DAB 51), but any prejudice defendant suffered from lost preparation time and impaired consultation here could have been cured before trial without permanently ending the case. Tailoring was still required.

The district court quoted *Morrison*'s tailoring language (ER-29) but didn't apply it. And it explained why—ICE. Presented with the possibility of directing that defendant be made available to his lawyers, the court responded that such a remedy "would do nothing to address ICE's practice of denying criminal defense attorneys equivalent access to their clients in ICE custody as is provided to immigration attorneys" and would not "cure ICE's apparent inability or refusal to accommodate criminal defense counsel's requests for VTC or legal calls in a reasonably timely manner." (ER-29–30.) In other words, the court rejected a remedy tethered to the specific access violation because it *would not reform the broader practices of a separate civil agency*. That is the opposite of tailoring.

The court's speedy-trial rationale also falls apart on inspection. It reasoned that a trial continuance would require defendant "to choose

between his constitutional rights." (ER-30.) But that was a false choice. Defendant does not dispute that approximately thirty days remained on the speedy-trial clock (which ran through January 30, 2026). There was no indication prior to the court's proposal of a dismissal motion on December 9 that defendant was unwilling to waive time. And even if defendant preferred the initial trial date, his preference for an earlier date within the speedy-trial period still did not entitle him to dismissal of all charges with prejudice when a less "drastic" measure would have remedied any prejudice from the access violation. *United States v. Rogers*, 751 F.2d 1074, 1076–77 (9th Cir. 1985); *Morrison*, 449 U.S. at 365–66.[6]

Defendant also argues that a trial-date continuance would have been futile because screenshots of Adelanto's public booking portal showed no appointments through May 2026. (DAB 42–43.) But that

[6] Defendant suggests that the only reason thirty days remained on the trial clock was that the government "forced the defense to file a motion to protect his Sixth Amendment rights." (DAB 45.) But the same could be said about any pretrial motion based on an alleged constitutional violation; 18 U.S.C. § 3161(h)(1)(D) still applies. Anyway, to the extent anyone "forced" the timing of defendant's motion, it was *the district court*. (*See* ER-64–65.)

was not the court's actual basis for rejecting a continuance, which is what this Court must evaluate on abuse-of-discretion review. (*See* ER-30.) Moreover, the screenshots at most reflected the facility's availability at that one moment in time. (*See* ER-176.) They did not establish that Adelanto would never permit more virtual appointments, especially in response to a court order. The district court had options available that would have solved the access problem and remedied any prejudice. But the court was not trying to solve a problem. Instead of trying to "craft an appropriate remedy" for the access violation, *Santos-Flores,* 794 F.3d at 1091, the court declared that nothing could be done to ensure defendant had access to counsel—ever.[7] (*See* ER-31.)

At minimum, a dismissal without prejudice was available as a "lesser remedial action." *Chapman*, 524 F.3d at 1087. Defendant does not contest the merits of this point; instead, he claims that the

[7] Defendant cites two Adelanto-related decisions issued in March and April 2026, months after the order under review. (DAB 43 n.15.) Those cases have no bearing here: a discretionary ruling is assessed on the record before the court at the time it ruled. In any event, judicial notice does not extend to the truth of facts found in those proceedings. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001); Fed. R. Evid. 201(b).

government waived or forfeited the "argu[ment] that the district court should have dismissed the indictment *without* prejudice." (DAB 47.) That makes no sense. Waiver is the intentional relinquishment of a known right. *United States v. Olano*, 507 U.S. 725, 733 (1993). Forfeiture is the failure to bring an error "to the court's attention." Fed. R. Crim. P. 52(b). The government opposed *any* dismissal. Not dismissing the case was "the action the party wishe[d] the court to take." Fed. R. Crim. P. 51(b). A party that objects to a draconian remedy does not waive its right to argue, on appeal, that lesser remedies were available, even if the party thinks that those remedies, too, would have been excessive. *See, e.g.*, *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 ("it is claims that are deemed waived or forfeited, not arguments").[8] A party is allowed to attack a remedy as unreasonable on appeal if it opposed that remedy below. The government did. And in any event, defendant—as the moving party—

[8] Under defendant's logic, a supervised-release defendant would waive any challenge on appeal to the reasonableness of one of his conditions unless he conceded to some similar, lesser condition before the district court. Or a defendant with a 12–24-month Guidelines range could not attack a 100-month sentence as substantively unreasonable without having conceded below to a high-end sentence.

had the burden of establishing that there was no adequate lesser remedy. *See United States v. Edmonds*, 103 F.3d 822, 825 (9th Cir. 1996); *United States v. Myvette,* No. 2:25-cr-00296-JAK, 2026 WL 485755, *6 (C.D. Cal. Feb. 19, 2026).

In sum, the district court relied heavily on *Santos-Flores*'s dictum about a court's ability to "craft an appropriate remedy." (ER-25 & n.13, 26, 29; GOB 45–47.) It even declared all seven out-of-circuit BRA/INA decisions "inapposite" on grounds that they failed to contain similar language. (ER-26.) And yet the remedy it chose was not "appropriate"—not under *Santos-Flores,* not under *Morrison,* and not under *Chapman*.

### *2. The Order Contains No Findings of Flagrant Prosecutorial Misconduct—and Defendant Cannot Supply Them on Appeal*

Dismissal with prejudice is permissible "only in cases of flagrant prosecutorial misconduct." *Chapman*, 524 F.3d at 1085 (citation omitted). Yet the court ordered dismissal with prejudice here without finding that any prosecutor—or anyone else—acted flagrantly, willfully, or even in bad faith. The only actual finding of government wrongdoing in the court's order (ER-27–28) did not pertain to the Sixth Amendment

access injury but (as discussed above) immigration authorities' purpose in detaining defendant under the INA. That finding, as previously explained, cannot survive the legal and factual errors on which it rests. But even if it could—even if there were facts showing that immigration authorities had pretextually detained defendant—that *still* would not amount to the flagrant prosecutorial misconduct that *Chapman* requires, for two further reasons.

First, the court's impermissible-purpose finding was not about the *prosecution's* conduct at all. It was about the conduct of immigration authorities acting (lawfully) to detain defendant under a separate statute. (ER-27–28.) Notwithstanding its complaints about the prosecution team's efforts to coordinate (but also failure to coordinate) with immigration authorities (*compare* ER-19 *with* ER-27–28), the court did not find misconduct by prosecutors or even the federal agents involved in the prosecution. *See United States v. Simpson*, 927 F.2d 1088, 1090 (9th Cir. 1991) ("Unless law enforcement officers break the law, the court has no authority [under supervisory powers] to sanction them.").

Because the district court's impermissible-purpose finding cannot come close to flagrant misconduct, defendant is left to construct some plausible alternative basis for the court's sanction. To this end, he argues at length that a deportation officer's declaration was false or misleading. (DAB 18–21, 37–39.) But the court never made such a finding, and certainly not as the basis for its with-prejudice dismissal. At most, the fact section in the court's order noted discrepancies between (1) the declaration and the declarant's later recollection during a telephone call (as memorialized by defense counsel), and (2) between the declaration and the facility's written visitation policy. (ER-9–12.) The court never found that the declaration was knowingly false, that the prosecution knew or should have known it was false, or that anyone acted in bad faith. Nor could it have fairly made that finding without holding a hearing—something it declined to do. A finding the district court did not make cannot supply the flagrant-misconduct finding that *Chapman* requires.

The discovery production issues in defendant's brief are also a red herring. (*See* DAB 22–24, 40–41, 52–54.) The initial production occurred on November 26, 2025, only *one day* after the court issued its

case-management order setting discovery deadlines. (ER-96, 106–07.) Video footage depicting the charged conduct was included in this first discovery production (ER-201), before the December 5 discovery cut-off date. Additional body-camera footage—which the government did not intend to introduce at trial, *see id.*—was produced on December 10, five days after the discovery cut-off but still weeks before trial. (*Id.*)[9] The court found no *Brady* violation, suppression of favorable evidence, or bad faith. It found only that the timing "exacerbated" the access problem. (ER-17.)

Defendant undercuts his own point, arguing that the footage he received on December 10 could not be reviewed with defendant because the facility would not schedule the December 16 meeting counsel had requested. (DAB 40–41.) That concedes that *scheduling*, not production, was the obstacle. In any event, the remedy for a "late"

[9] The court faulted the government for failing to comply with the court's discovery deadlines. But the government produced the evidence it intended to use at trial before the discovery deadline, which by its terms applied only to evidence to be used at trial. (ER-106.) Other deadlines were literally impossible to meet. For instance, the November 25 case-management order required expert witnesses to be disclosed "no later than 21 days before the discovery cutoff" of December 5—a deadline that passed before the case had even been assigned.

production is not permanent termination of the prosecution. *Cf. Morrison*, 449 U.S. at 366.

#### *a.* **Chapman** *and* **Bundy** *underscore why dismissal was inappropriate*

*Chapman* and *Bundy* are far from this case. In *Chapman*, the government not only disclosed more than 650 pages of material during the third week *of trial*, but the prosecutor made repeated, affirmative misrepresentations to the court. 524 F.3d at 1078–81. The district court held a hearing and expressly found that the prosecutor acted flagrantly, willfully, and in bad faith. *Id.* at 1085. It rejected the government's argument that a mistrial was an appropriate lesser remedy. *Id.* at 1087. This Court affirmed, agreeing that a mistrial might allow the government to unfairly "salvage what the district court viewed as a poorly conducted prosecution" based on the "myriad weaknesses" the district court had observed during the three-week trial. *Id.*

*Bundy* was similar. There, weeks *into trial*, it "became apparent that important evidence had been withheld by the government." *Bundy,* 968 F.3d at 1026. After conducting multiple hearings, the district court expressly found reckless and flagrant prosecutorial

misconduct, including "disingenuous" representations to the court. *Id.* at 1026–30. This Court affirmed, finding that the *Brady* violations both caused substantial prejudice and constituted flagrant prosecutorial misconduct. *Id.* at 1031–44. And it agreed with the district court that a new trial would have rewarded the government with a "dry run" at the defense's case. *Id.* at 1045.

Nothing even close to that happened here. (*See* DAB 53–54.) No exculpatory evidence was withheld, and the court found no intentional misconduct by anyone. Unlike the trial court in *Chapman,* the district court here had no basis to call the prosecution "poorly conducted." (ER-27.) It had barely been "conducted" at all. No jury had been empaneled, no jeopardy had attached, and no witnesses had been called. The court had not held a hearing on anything beyond bail and a cash-deposit bond requirement.

The district court's assertion that the prosecution was "faltering" was not a commentary on the government's presentation of evidence, but rather an opinion about the government's *charging decision*. That is not a legitimate basis for dismissal under the court's supervisory powers. (*See* GOB 3–4.) *See also United States v. Barrera-Moreno*, 951

F.2d 1089, 1093 (9th Cir. 1991) ("[p]rejudice could not be a factor for [defendants] who have not yet been tried").

### C. The District Court Exceeded the Bounds of its Supervisory Powers

Finally, defendant takes issue with the government's "advocacy," accusing it of "meritless" *ad hominem* attacks on the district judge. (DAB 54–57.) Not so. An *ad hominem* argument seeks to discredit a position by impugning the character of the person who advances it, rather than by engaging the position on its merits. Quoting a district court's written orders and its statements on the record is not an *ad hominem* attack. It is the business of appellate review, and the lens through which this Court examines a district judge's exercise of his discretionary powers.

Contrary to defendant's accusation, the government's criticism is not directed at the district judge as a person. It is directed at what he did:

- Preemptively threatened to dismiss the indictment if defendant—who had an outstanding immigration detainer and was charged with a crime requiring mandatory immigration detention—were to be civilly detained upon his release from federal custody (ER-207–08);

- Repeatedly espoused its unsolicited "view" that defendant "should not be in ICE custody" and asked whether it should dismiss the case on this basis (ER-36–38);

- Read aloud, unprompted, from a decade-old government brief about ICE in an unrelated case and told the prosecutor that was the "government's position" (ER-38–39);

- Directed defense counsel to seek dismissal of the indictment on specific grounds and then granted defendant's motion without holding a hearing (ER-64–65; ER-5); and

- Permanently nullified a federal felony prosecution, early in the case, where lesser remedies were plainly available and there was no finding of prosecutorial misconduct to support that sanction (ER-29–32).

This record reflects a significant abuse of discretion.

A court's supervisory power exists "to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and to deter future illegal conduct." *Chapman*, 524 F.3d at 1085; *see also* GOB 64–68. It is not a "license to intrude into the authority, powers[,] and functions of the coordinate branches." *Simpson*, 927 F.2d at 1089; *United States v. Jennings*, 960 F.2d 1488, 1491 (9th Cir. 1992) ("[T]he supervisory power . . . is not

without its limits. One such limit is our government's separation of powers.").

The district court lost sight of that here. It failed to heed this Court's admonition that, in exercising supervisory authority, "judges must be careful to supervise their own affairs and not those of the other branches." *Simpson*, 927 F.2d at 1091. Supervising a co-equal branch of government, in fact, appears to have been the district court's aim. And one need not "look behind [its] written order" or "second-guess [its] motives" (DAB 63) to see that. The court said so itself. (*See* ER-29–30; ER-25 ("The government's decision to detain Mr. Parias in Adelanto does not mean, however, that this Court is powerless to prevent the Executive Branch from ignoring its obligations under the Constitution.") (cleaned up).)

The district court was required to impose a remedy tailored to the constitutional injury here: defendant's access-to-counsel challenges in the weeks leading up to trial. Instead, it carried out its earlier threats and permanently shut down a federal criminal prosecution to sanction the government for a separate civil-detention decision made, in this case, by Congress. That exceeded the court's supervisory authority.

"Judges are not legislators, free to make laws guided only by their moral compass or notions of national interest; nor are they executive officers, vested with discretion over law enforcement policy and decisions." *Simpson*, 927 F.2d at 1089. Their duty is "to say what the law is," and "apply the rule to [a] particular case." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). They sit to exercise "neither force nor will, but merely judgment." The Federalist No. 78 (Hamilton). The court here abused that judgment.

## III

## CONCLUSION

This Court should reverse and remand with instructions to reinstate the indictment.

DATED: September 21, 2026

Respectfully submitted,

TODD D. BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

*s/ Amy E. Pomerantz*

ALEXANDER P. ROBBINS
AMY E. POMERANTZ
Assistant United States Attorneys
Criminal Appeals Section

Attorneys for Plaintiff-Appellant
UNITED STATES OF AMERICA

## STATEMENT OF RELATED CASES

The government's appeal of a with-prejudice dismissal order based on civil immigration detention is also before this Court in *United States v. Zambrano*, C.A. 26-961 (C.D. Cal.) (Gee, C.J.), *see* Cir. R. 28-2.6(b). The government has moved in that case to set oral argument in *Zambrano* for October 30, 2026, before this panel.

**CERTIFICATE OF COMPLIANCE**

I certify that:

1. This brief complies with the length limits permitted by Ninth Circuit Rule 32-1 because the brief contains 6,981 words, excluding the portions exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word.

DATED: September 21, 2026 *s/ Amy E. Pomerantz*

AMY E. POMERANTZ
Attorney for Plaintiff-Appellant
UNITED STATES OF AMERICA